# WILMINGTON TRANSPORTATION COMPANY v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 369.   Argued December 15, 16, 1914.—Decided February 1, 1915.

The mere existence of Federal power does not, while dormant, preclude the reasonable exercise of state authority as to those matters of interstate or foreign commerce which are distinctly local in character in order to meet the needs of suitable local protection until Congress does act.

Congress may regulate interstate transportation by ferry as well as other interstate commercial intercourse; but, until it does, a State may prevent unreasonable charges for ferriage from a point of departure within its borders.

A State may, in the absence of any action by Congress, prevent through proper orders of its Railroad Commission exorbitant charges for transportation having both origin and termination within the State and none of it being within any other State although a part of it may be over the high seas.

166 California, 741, affirmed.

THE facts, which involve the power of the State Railroad Commission of California to regulate rates of trans-

portation between intrastate points where part 'of the transportation is on the high seas, are stated in the opinion.

*Mr. Edward E. Bacon,* with whom *Mr. James A. Gibson* was on the brief, for plaintiff in error.

*Mr. Max Thelen,* with whom *Mr. Douglas Brookman* and *Mr. Allan P. Matthew* were on the brief, for defendant in error.

MR. JUSTICE HUGHES delivered the opinion of the court.

The Wilmington Transportation Company, a corporation organized under the laws of the State of California, is engaged as a common carrier of passengers and goods by sea, between San Pedro, on the mainland, and Avalon, on Santa Catalina Island, both places being within the County of Los Angeles in that State. Merchants at Avalon, insisting that the rates charged for this transportation were unreasonable, presented their complaint to the Railroad Commission of the State of California and asked that reasonable rates be fixed under the Public Utilities Act of 1911. Stats. (Cal.) 1911, Ex. Sess., p. 18. The Transportation Company challenged the authority of the Commission upon the ground that the business was subject exclusively to the regulating power of Congress. The Commission overruled the contention and its authority to prescribe reasonable rates between these ports of the State was sustained on writ of review by the state court. 166 California, 741. The case has been brought here on error.

The vessels of the plaintiff in error, in their direct passage between the ports named, must traverse the high seas for upwards of twenty miles. Adopting the statement of the Commission, the Supreme Court of the State puts the case thus: 'They do not touch at any other port,

either of the United States or of any foreign country. They do not transfer their passengers or freight to any other vessel in their course. They do not on the voyage take on or put off any article of commerce. While a portion of the voyage is on the high seas, the navigation thereof is merely incidental to the real purpose of the voyage, which is to ply between two ports, both of which are located in the same county in this State.'

Relying upon *Lord* v. *Steamship Co.*, 102 U. S. 541, the plaintiff in error contends that transportation over the high seas is 'commerce with foreign nations' in the constitutional sense. (See *Lehigh Valley R. R.* v. *Pennsylvania*, 145 U. S. 192, 203; *The Abby Dodge*, 223 U. S. 166, 176.) But if it be assumed for the present purpose that the power of Congress extends to the subject of this controversy, the fact remains that the power has not been exercised. The provisions of the Federal statutes relating to vessels do not go so far, and the Interstate Commerce Commission has not been authorized to prescribe rates for water transportation unconnected with transportation by railroad. 36 Stat. 539, 545. In this aspect, the question is whether the mere existence of the Federal power, that is, while it is dormant, precludes the exercise of state authority to prevent exorbitant charges with respect to this traffic which has its origin and destination within the limits of the State.

It is urged that the fixing of rates is a regulation of the commerce involved, and hence of necessity is repugnant to the Federal authority, although the latter be unexercised. This proposition, however, as has frequently been pointed out, is too broadly asserted if no regard be had to the differences in the subjects which, by virtue of the Commerce Clause, are within the control of Congress. Thus, vessels engaged in foreign commerce have been compelled to submit to state requirements as to pilotage and quarantine since the foundation of the Gov-

ernment, although it could not be denied that these requirements were regulations which Congress could at any time displace. *Cooley* v. *Board of Wardens*, 12 How. 299, 317, 319; *Ex parte McNiel*, 13 Wall. 236, 240; *Wilson* v. *McNamee*, 102 U. S. 572; *Anderson* v. *Pacific Coast S. S. Co.*, 225 U. S. 187, 195; *Morgan S. S. Co.* v. *Louisiana*, 118 U. S. 455, 465; *Compagnie Francaise* v. *Board of Health*, 186 U. S. 380, 387. In these cases, it was apparent that the subject was of a local nature admitting of diversity of treatment according to local necessities, and it could not be supposed that it was the intention to deny to the States the exercise of their protective power, in the absence of Federal action. It is not necessarily determinative that the vessels in the course of the transportation in question pass beyond the boundary of the State. See *The Hamilton*, 207 U. S. 398, 405. In the case of ferries over boundary waters, it has always been recognized that ferriage from the shore of a State is peculiarly a matter of local concern and, while undoubtedly Congress may regulate interstate transportation by ferry as well as other interstate commercial intercourse, still, because of the nature of the transportation and the local exigency, a State in the absence of Federal regulation may prevent unreasonable charges for carriage by ferry from a point of departure within its borders. *Port Richmond Ferry* v. *Hudson County*, 234 U. S. 317, 332; *Sault Ste. Marie* v. *International Transit Co.*, 234 U. S. 333, 342. The rule which the plaintiff in error invokes is not an arbitrary rule, with arbitrary exceptions, but is one that has its basis in a rational construction of the Commerce Clause. As repeatedly stated, it denies authority to the States in all cases where the subject is of such a nature as to demand that, if regulated at all, its regulation should be through a general or national system, and that it should be free from restraint or direct burdens save as it is constitutionally governed by Congress; and on the other hand, as to those matters which

are distinctively local in character although embraced within the Federal authority, the rule recognizes the propriety of the reasonable exercise of the power of the States, in order to meet the needs of suitable local protection, until Congress intervenes. *Cooley* v. *Board of Wardens, supra; Ex parte McNiel, supra; Welton* v. *Missouri,* 91 U. S. 275, 280; *County of Mobile* v. *Kimball,* 102 U. S. 691, 697; *Gloucester Ferry* v. *Pennsylvania,* 114 U. S. 196, 204; *Bowman* v. *Chicago &c. Ry.,* 125 U. S. 465, 481; *Minnesota Rate Cases,* 230 U. S. 352, 399–403; *Port Richmond Ferry* v. *Hudson County, supra.*

It was by the application of these principles that it was decided that a State could not prescribe rates for interstate railroad transportation, even with respect to that portion of the route which was within its own territory. As was said by Mr. Justice Miller, in delivering the opinion of the court upon this question (*Wabash &c. Ry.* v. *Illinois,* 118 U. S. 557, 577), after recognizing the authority of the State to prescribe intrastate rates: "But when it is attempted to apply to transportation through an entire series of States a principle of this kind, and each one of the States shall attempt to establish its own rates of transportation, its own methods to prevent discrimination in rates, or to permit it, the deleterious influence upon the freedom of commerce among the States and upon the transit of goods through those States cannot be overestimated. That this species of regulation is one which must be, if established at all, of a general and national character, and cannot be safely and wisely remitted to local rules and local regulations, we think is clear from what has already been said." And the same conclusion has been reached with respect to the fixing of rates for railroad transportation which, while beginning and ending in the same State, passes through the territory of another State. The regulation of such rates cannot be 'split up' according to the jurisdiction of the respective States

over the track; there must be one rate fixed by one authority. *Hanley* v. *Kansas City Southern Ry.*, 187 U. S. 617, 620.

We are not here dealing with the case of property which is in course of continuous transportation to another State or to a foreign country. *The Daniel Ball*, 10 Wall. 557; *Ohio Railroad Commission* v. *Worthington, Receiver*, 225 U. S. 101; *Texas & N. O. R. R.* v. *Sabine Tram Co.*, 227 U. S. 111, 124; *Railroad Commission* v. *Texas & Pacific Ry.*, 229 U. S. 336. It must be assumed upon this record that the State claims the right to exercise its authority only as to transportation between the mainland and the island, and solely with respect to such shipments over this route as are local to the State, both as to the beginning and the end of the transportation. There is no passage through the territory of another State; the transportation, in its entire course, is subject to a single authority—either that of Congress or that of the State—and the latter would yield to the exercise of the former. The sovereignty of no other jurisdiction is encountered. It is plainly of importance to the people of the State that this local traffic should be carried upon reasonable terms; and if, in the case of a ferry, a State may protect its people from extortion although the ferriage is to the shore of another State, there is in our judgment no ground for saying that where the transportation is between two places in the same State it is less a subject for local action, in the absence of Federal interposition, because the voyage is over a stretch of open sea. Congress has not attempted to intervene, and we find no basis for the conclusion that the subject is one which must be deemed to be wholly free from regulation unless Congress deals with it. On the contrary, it is precisely of that local character which permits it to be left appropriately to the care of the State.

A different conclusion was reached at Circuit in *Pacific Coast Steamship Co.* v. *Railroad Commissioners*, 18 Fed.

Rep. 10, but for the reasons stated, we are unable to agree with it. The judgment of the Supreme Court of California is affirmed.

*Judgment affirmed.*