**MATSON NAVIGATION COMPANY, INC., Plaintiff,**

v.

**HAWAII PUBLIC UTILITIES COMMISSION and Yukio Naito, in his capacity as Chairman, Hawaii Public Utilities Commission, Defendants,**

and

**Young Brothers, Limited, Defendant–Intervenor.**

**Civ. No. 90–00052 DAE.**

United States District Court, D. Hawaii.

July 19, 1990.

Robert A. Marks, Esq. appeared on behalf of the defendant Hawaii Public Utilities Commission; and J. Douglas Ing, Esq. and Pamela J. Larson, Esq. appeared on behalf of defendant-intervenor Young Brothers, Limited.

The court, having reviewed the motions and the memoranda in support thereof and in opposition thereto, having heard oral arguments of counsel, and being fully advised as to the premises herein, grants in part and denies in part defendants' motions for summary judgment, grants in part and denies in part plaintiff's cross-motion for summary judgment and denies plaintiff's motion to amend its complaint.

## I. BACKGROUND

Plaintiff Matson Navigation Company, Inc. ("Matson") is an ocean common carrier authorized to carry interstate freight from the mainland United States to Hawaii pursuant to a tariff filed with the Federal Maritime Commission ("FMC"). Matson brings this action against the defendant Hawaii Public Utilities Commission ("HPUC") to enjoin it from enforcing its Decision and Order 10497 ("Order 10497"), issued January 25, 1990 and from exercising jurisdiction over any of its shipments between Honolulu, Hawaii and the neighbor islands.

Young Brothers carries freight between Oahu and the neighbor islands pursuant to a certificate of public convenience issued by the HPUC pursuant to Haw.Rev.Stat. § 271G–10(a).[1] This court has allowed Young Brothers, Limited ("Young Brothers") to intervene as a defendant in this action.

### A. *The State and Federal Regulatory Framework*

Prior to Hawaii's admission to the United States, the Federal Maritime Board ("FMB") (now known as the Federal Maritime Commission) had jurisdiction to regulate shipment between islands in the Terri-

William C. McCorriston, Richard B. Miller, and Mark J. Bennett, McCorriston Miho & Miller, Honolulu, Hawaii, for plaintiff.

J. Douglas Ing and Pamela J. Larson, Kobayashi Watanabe Sugita Kawashima & Goto, Honolulu, Hawaii, for Young Bros.

Warren Price, III, Ted Gamble Clause, and Robert A. Marks, Office of the Atty. Gen., Honolulu, Hawaii, for Hawaii Public Utilities Com'n.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT

DAVID A. EZRA, District Judge.

On May 21, 1990, a hearing was held on defendants' motions to dismiss and for summary judgment and on plaintiff's motion for preliminary injunction, cross-motion for summary judgment, and motion to amend complaint. Mark J. Bennett, Esq. and Richard B. Miller, Esq. appeared on behalf of plaintiff Matson Navigation Company, Inc.; Ted Gamble Clause, Esq. and

1. Haw.Rev.Stat. § 271G–10(a) provides as follows:

... no water carrier shall engage in operations between points within the State, unless

such carrier holds a certificate of public convenience and necessity issued by the public utilities commission authorizing such operation....

tory of Hawaii pursuant to the Shipping Act of 1916, 46 U.S.C.App. § 801 et seq. In 1959, the inception of statehood through the Hawaii Admission Act, Pub.L. 86–3, 73 Stat. 4 (1959), transformed the regulatory arena with respect to interisland shipping.

Section 15 of the Admission Act provides that all laws enacted by Congress "the validity of which [are] dependent solely upon the authority of the Congress to provide for the government of Hawaii prior to its admission into the Union" would terminate two years after the date of admission of the State of Hawaii. Therefore, the FMB presumably no longer had jurisdiction over interisland shipping pursuant to the Shipping Act of 1916 as of 1961. Section 18(a) of the Act, however, provides as follows:

> Nothing contained in this Act shall be construed as depriving the Federal Maritime Board of the exclusive jurisdiction heretofore conferred on it over common carriers engaged in transportation by water between any port in the State of Hawaii and other ports in the United States, or possessions, or as conferring on the Interstate Commerce Commission jurisdiction over transportation by water between any such ports.

The State of Hawaii presently regulates interisland shipping pursuant to the Hawaii Water Carrier Act, Haw.Rev.Stat. Ch. 271G (1974). The Act provides that "no water carrier shall engage in operations between points within the State, unless such carrier holds a certificate of public convenience and necessity issued by the public utilities commission authorizing such operation." [2] Haw.Rev.Stat. § 271G–10(a). The Act further provides that "[e]very water carrier shall file with the public utilities commission, and print, and keep open to public inspection, tariffs showing all the rates, fares and charges for transportation, fares, and all services in connection therewith, of

passengers or property." Haw.Rev.Stat. § 271G–17(a).

The Hawaii Water Carrier Act specifically does not apply to "interstate or foreign commerce unless permitted by the constitution and laws of the United States." Haw. Rev.Stat. § 271G–4.

The Shipping Act, 1916, 46 U.S.C.App. § 801, confers jurisdiction on the FMC over common carrier movements between a place in a state and a place in any other state over the high seas. The FMC does not have jurisdiction over shipments between points within the State of Hawaii unless those shipments are part of continuous movement in interstate or foreign commerce. *Cf. Baltimore & Ohio Southwestern R.R. Co. v. Settle*, 260 U.S. 166, 174, 43 S.Ct. 28, 31, 67 L.Ed. 189 (1922).

### B. *Procedural History*

For many years, Matson has been carrying cargo between the mainland United States and Honolulu pursuant to an FMC tariff. In 1985, Matson expanded its service by filing Freight Tariff No. 60 ("Tariff 60") with the FMC to cover movement of certain goods from Honolulu, Oahu to the ports of the islands of Hawaii, Maui and Kauai.

Over the protest of Young Brothers, the FMC issued a Disposition Notice in December, 1985 which allowed Tariff 60 to become effective. Although the FMC found that Tariff 60 was properly filed, it indicated that whether a particular Matson shipment would be subject to Tariff 60 would depend on factual issues regarding the individual shipper's intent.

On December 23, 1985, Young Brothers filed a complaint with the HPUC asserting that Matson shipments being carried between islands pursuant to Tariff 60 violate the Hawaii Water Carrier Act, Haw.Rev. Stat. § 271G–10. Notably, Young Brothers specifically complained of shipments of Paradise Beverages, Inc. ("Paradise"); D &

---

**2.** A certificate shall be issued to any qualified applicant therefore, authorizing the whole or any part of the operations covered by the application if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the requirements, rules, and regulations of the commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity.

Haw.Rev.Stat. § 271G–10(c).

D Industries, Inc.; Firestone Tire & Rubber Company, and HOPACO. The HPUC stayed its decision, however, pending a decision by the FMC on a petition filed there by Matson.

In June, 1988, the FMC denied Matson's petition for a declaratory order, finding that the extent of its jurisdiction could only be determined through close examination of the specific facts of the subject shipments and not based on the generalized information provided by Matson in its petition. *See* Order Denying Without Prejudice Petition for Declaratory Order, FMC, Dkt. No. 87–18, filed June 7, 1988.

On January 25, 1990, the HPUC issued Order 10497 in response to Young Brothers' complaint. The HPUC held as follows:

> Matson shall not engage in the business of transporting cargo from the Honolulu warehouse of the in-state shippers [Paradise Beverages, D & D Industries, Inc., Firestone Tire & Rubber Company, and HOPACO] to the shippers' neighbor island outlets without first obtaining a certificate of public convenience and necessity from this Commission, pursuant to HRS section 271G–10, and filing with the Commission and keeping open to public inspection tariffs showing the rates, fares and charges for the intrastate transportation of cargo pursuant to HRS section 271G–17.

Order 10497 at 46.

The issue before the HPUC was whether cargo shipped in interstate commerce retains interstate commerce identification after it reaches the Honolulu docks, is transported by motor carrier to the in-state shipper's Honolulu warehouse, is unloaded and shelved into general inventory, and is then subsequently reloaded into containers and transported by Matson's barges to the in-state shipper's neighbor island stores and outlets. *Id.* at 21. After examining the individual shippers' procedures in detail, and considering the shippers' intent, the HPUC found that the cargo did not retain its interstate character, but rather became intrastate cargo subject to regulation by the HPUC upon its initial receipt in Honolulu. *Id.* at 24.

The HPUC went even further, however, by holding that, pursuant to the Bus Regulatory Reform Act of 1982 ("BRRA"), 49 U.S.C. § 10525(e), sec. 30 (Pub.L. 97–261, 96 Stat. 1102, 1129 (1982))[3], Matson's cargo is divested of its interstate character once it crosses the Honolulu docks as a matter of law. *Id.* at 33. The HPUC enunciated the sweeping rule that under the BRRA any cargo which reaches the docks in Honolulu through interstate commerce automatically loses its interstate character when it is moved through the docks by motor carrier, based on the exemption of Hawaii motor carriers from the jurisdiction of the Interstate Commerce Commission. *Id.* at 38.

Matson did not appeal the HPUC order,[4] but instead filed the instant complaint for declaratory and injunctive relief and its motion for a temporary restraining order on January 30, 1990.[5] Matson claimed that its Tariff 60 shipments were in interstate commerce and therefore, within the exclusive regulatory jurisdiction of the FMC.

---

3. Section 10525(e) provides as follows:
 Notwithstanding the provisions of this section, the [Interstate Commerce] Commission has no jurisdiction under this subchapter over transportation, except transportation of household goods, by a motor carrier operating solely within the State of Hawaii. The State of Hawaii may regulate transportation exempt from the jurisdiction of the Commission under this subsection and, to the extent provided by a motor carrier operating solely within the State of Hawaii, transportation exempt from the jurisdiction of the Commission under Section 10523 of this title.

4. Haw.Rev.Stat. § 271G–24 provides that an appeal of an HPUC order lies with the Supreme Court of the State of Hawaii.

5. On February 2, 1990, this court granted plaintiff's motion for a temporary restraining order enjoining the HPUC from enforcing Order 10497. Without passing on the merits of Matson's complaint, the court found that at that time the balance of hardships tipped sharply in Matson's favor. Accordingly, the court issued a temporary restraining order which applied only to the Tariff 60 shipments of Paradise goods. On May 24, 1990, this court denied Matson's motion for preliminary injunction and dissolved the TRO after the FMC declined to exercise jurisdiction over the Paradise goods pursuant to Tariff 60.

Prior to filing its complaint in this court, Matson again sought a declaratory order from the FMC, this time with respect to three of its Tariff 60 shipments, Paradise, ABF Cartage and Goodyear Tire & Rubber Company. Matson sought a determination that these shipments are within the jurisdiction of the FMC and covered by Tariff 60. Matson also requested the FMC to make a general ruling that cargo with certain characteristics which were listed in its petition are subject to FMC jurisdiction.

On April 24, 1990, after the instant motions were filed, the FMC issued an order determining its jurisdiction over certain Tariff 60 shipments. *Matson Navigation Company, Inc.—Transportation of Cargoes Between Ports and Points Outside Hawaii and Islands within the State of Hawaii,* Docket No. 89–2, Order Granting in Part and Denying in Part Petition for Declaratory Order (F.M.C. April 24, 1990) (hereinafter "the FMC Order").

In its well reasoned order, the FMC carefully analyzed the specific Matson Tariff 60 shipments which were the subject of the petition, and examined the original and persisting intent of the shippers to determine whether these secondary in-state shipments of out-of-state cargo were interstate and within the FMC's jurisdiction. *Id.*

The FMC found that "the in-state transportation of Paradise's ... cargoes is disconnected from the previous transportation from the U.S. mainland and is not part of continuous commerce." *Id.* at 63. The FMC listed a number of factors which were lacking in the Paradise shipments, which might have indicated that the shipments were in interstate commerce: (1) a storage-in-transit provision, (2) instructions on first movement bills of lading that the cargo was to be held in storage pending subsequent movement, (3) through bills of lading, (4) or existing contracts or specific orders for specific quantities of cargo. *Id.* at 62.

The FMC also found, however, that it has jurisdiction over Matson's ABF Cartage shipments. *Id.* at 54. These shipments originate on the mainland and are not warehoused in Honolulu, but are reconfigured in Honolulu and moved through as quickly as possible to neighbor island destinations.

The FMC refused to grant Matson's general request for blanket jurisdiction based on the general cargo characteristics described in its petition. *Id.* at 63. The FMC stated in its order as follows:

> ... the Commission could not go so far as to issue a broad proclamation of federal jurisdiction based on these assumed "facts," because they do not provide sufficient evidence linking each secondary movement from the hub to a preceding origin-to-hub movement, and showing that the hub consignee has a clearly formed intent to ship the cargo to an established destination beyond the warehouse when he first orders it from the mainland. These requirements are not satisfied by stipulations that the Honolulu consignee intends that the cargo move to some destination beyond its warehouse and signifies this intent by executing Matson's Tariff 60 certificate when it tenders cargo for shipment to the neighbor islands.

*Id.* at 63–64.

The FMC also found that the HPUC incorrectly asserted that it had jurisdiction over all secondary shipments where the cargo was unloaded on docks in Honolulu and then shipped to neighbor islands. *Id.* at 46–48. It explicitly rejected the HPUC's analysis under the BRRA, which would essentially convert any cargo unloaded in Honolulu from interstate to intrastate freight. *Id.*

On May 14, 1990, in an attempt to comply with the April 25, 1990 FMC order, Matson filed an amended Tariff 60.[6] The amended tariff applies to two categories of shipments which are purportedly in interstate or foreign commerce.

The first category includes those goods for which the ultimate destination in Hawaii was known at the time the goods were originally shipped.[7] The second category

---

**6.** This tariff was to become effective June 13, 1990.

**7.** The FMC held that this type of shipment is moving through interstate commerce and therefore, within the FMC's jurisdiction.

of goods covered by the tariff includes those goods which have been stored in transit in Hawaii before being shipped under the amended Tariff 60. The tariff includes a storage-in-transit provision which outlines specific requirements which must be met with respect to this category of goods to ensure that the goods comply with the FMC's April 25, 1990 Order.

Matson's present complaint seeks a declaration that its interisland shipments are interstate and within the exclusive jurisdiction of the FMC. Matson also seeks a declaration that the HPUC may not regulate these shipments by requiring a certificate of public use and convenience or by requiring Matson to file tariffs or rates with the HPUC. In addition, Matson seeks an injunction to enjoin the HPUC from enforcing Order 10497.

Matson initially argued only that Tariff 60 goods move in interstate commerce and therefore, are within the exclusive jurisdiction of the FMC and beyond the jurisdiction of the HPUC. Matson later broadened the scope of its argument, however, contending that goods Matson ships between Oahu and the neighbor islands are shipped in interstate and foreign commerce without regard to point of origin solely because the goods pass over the high seas and outside the State of Hawaii. Therefore, Matson now asserts that the HPUC's attempt to regulate such shipments is prohibited by the dormant commerce clause, art. I, section 8 of the United States Constitution.

The HPUC and Young Brothers move to dismiss Matson's complaint, or in the alternative for summary judgment, on the following grounds: (1) collateral estoppel or res judicata; (2) the *Younger* or *Burford* abstention doctrines; and (3) the Anti-Injunction Act. The HPUC asserts the following additional arguments: (1) plaintiff has failed to exhaust its state remedies; (2) the eleventh amendment precludes injunctive relief; and (3) the Hawaii Water Carrier Act does not violate the commerce clause since Congress has validly authorized Hawaii to regulate interisland freight traffic *without* regard to shipper intent.

Matson cross-moves for summary judgment based on its argument under the dormant commerce clause. Matson also moves to amend its complaint to comport with its amended Tariff 60.

## II. DEFENDANTS' MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

### A. *Exclusive FMC Jurisdiction and Shippers' Intent*

■ Matson seeks essentially two forms of relief in its complaint. It seeks a declaration that the FMC has exclusive jurisdiction to regulate its interisland Tariff 60 shipments and a declaration that the HPUC may not regulate Tariff 60 shipments by requiring a certificate of public use and convenience, or by requiring Matson to file tariffs or rates, or by enforcing its Order 10497.

The FMC, as well as the HPUC, have now determined that certain Tariff 60 shipments, including those shipped by Paradise, are not in continuous movement in interstate commerce and, therefore, not within FMC jurisdiction. The FMC also declined to determine that it has blanket jurisdiction over all of Matson's Tariff 60 cargo.

Matson now concedes that it cannot relitigate the issue of whether the unamended Tariff 60 shipments from the mainland to the neighbor islands through Honolulu are in interstate commerce based on their continuous movement in interstate commerce. Matson's Memorandum of Law in Opposition to Young Brothers, Ltd.'s Motion to Dismiss Complaint or for Summary Judgment at 38.

Therefore, with respect to unamended Tariff 60 cargo, it is unnecessary for this court to determine whether the HPUC's determination of shippers' intent in its Order 10497 should be given preclusive effect since this court finds the FMC determination binding on that issue. The FMC has made a determination with respect to its jurisdiction over unamended Tariff 60 cargo and Matson may not now relitigate those issues in this court.

Accordingly, the court finds that summary judgment should be granted in favor of defendants and Matson's complaint should be dismissed insofar as it seeks a declaration of exclusive FMC jurisdiction over unamended Tariff 60 goods.

The issue remains, however, whether Matson should be precluded from litigating whether the dormant commerce clause prevents the HPUC from regulating *any* Matson shipments regardless of FMC jurisdiction. Hence, the court must address the plaintiff's and defendants' arguments as they apply to Matson's request that this court enjoin the HPUC from exercising any regulatory control over Matson's interisland shipments.

### B. *Abstention*

Defendants argue that this court should abstain from reaching the dormant commerce clause issue because Matson failed to raise it in the state proceedings and the question hinges on the meaning and application of a Hawaii state law. Accordingly, defendants move to dismiss Matson's complaint under either the *Burford* or *Younger* abstention doctrines.

### 1. *Burford Abstention*

In *Burford v. Sun Oil Co,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424, *reh'g denied,* 320 U.S. 214, 63 S.Ct. 1442, 87 L.Ed. 1851 (1943), the United States Supreme Court held that federal courts should abstain from interfering in complex state regulatory schemes in cases involving (1) difficult state-law questions bearing on policy problems of substantial public import, or (2) efforts to establish a coherent state policy regarding a matter of substantial public concern.

Recently, in *New Orleans Public Service, Inc. v. Council of New Orleans,* —— U.S. ——, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) ("*NOPSI*"), the Supreme Court held that *Burford* abstention did not apply where an electric utility sought injunctive relief with respect to a state rate-making authority's decision. The issue in *NOPSI* was whether a rate order was facially preempted by federal law. The Court held that

[s]uch an inquiry would not unduly intrude into the processes of state government or undermine the State's ability to maintain desired uniformity. It may, of course result in an injunction against enforcement of the rate order, but "there is ... no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy."

*Id.* 109 S.Ct. at 2515.

This court would be reluctant to intrude into the processes of state government or into proceedings where there exists a question with respect to a complex state regulatory scheme. In the instant case, however, the question presented is a pure constitutional challenge to an HPUC order issued pursuant to a state statute which allegedly encroaches on an area reserved solely for federal regulation. A determination with respect to the facial validity of an administrative order does not interfere with the processes of state government, nor does it require this court to have any local administrative expertise.

Therefore, the court finds that *Burford* abstention is inapplicable to the facts of this case.

### 2. *Younger Abstention*

Defendants also assert that this court should abstain pursuant to the doctrine enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The *Younger* doctrine requires the district court to abstain from enjoining pending state proceedings where the state has "a legitimate, substantial interest in its pending proceedings." *NOPSI* 109 S.Ct. at 2516. *Younger* abstention is appropriate in the context of state administrative proceedings in which important state interests are vindicated, so long as the plaintiff would have a full opportunity to litigate its constitutional claim. *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).

Therefore, the inquiry in determining *Younger* abstention is threefold: (1) are the relevant proceedings ongoing state judicial proceedings; (2) do the proceedings

implicate important state interests; and (3) is there an adequate opportunity in the state proceedings to raise constitutional challenges. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

### a. *Ongoing State Judicial Proceedings*

■ The *Younger* abstention doctrine applies only where the ongoing state proceedings are "judicial in nature." *NOPSI,* 109 S.Ct. at 2519. In *NOPSI,* the Supreme Court found that a state ratemaking proceeding was a legislative act to which *Younger* abstention was inapplicable. *Id.,* 109 S.Ct. at 2519–2520. The Court quoted Justice Holmes in *Prentis v. Atlantic Coast Line Co,* 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908), which set forth the appropriate test to be applied:

A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is the making of a rule for the future, and therefore is an act legislative and not judicial in kind ...

*NOPSI,* 109 S.Ct. at 2519. The form of the agency's proceedings, however, is not determinative of the nature of those proceedings. *Id.* The Supreme Court further quoted from its decision in *Prentis,* which explained as follows:

And it does not matter what inquiries may have been made as a preliminary to the legislative act. Most legislation is preceded by hearings and investigations. But the effect of the inquiry, and of the decision upon it, is determined by the nature of the act to which the inquiry and decision lead up.... The nature of the final act determines the nature of the previous inquiry. As the judge is bound

to declare the law he must know or discover the facts that establish the law. So when the final act is legislative the decision which induces it cannot be judicial in the practical sense, although the questions considered might be the same that would arise in the trial of a case. *Id.*

■ Defendants contend that the proceedings before the HPUC were not legislative but judicial because it investigated, declared and enforced liabilities "as they stand on present or past facts under laws supposed already to exist." *Id.* The court agrees.

In its order, the HPUC made a determination pursuant to the Hawaii Water Carrier Act under specific facts which were presented to it. The HPUC made specific findings with respect to particular shipments made by Matson pursuant to unamended Tariff 60. The "nature of the final act" was not to declare a rule for the future, but rather to determine the HPUC's jurisdiction over certain shipments and to determine whether Matson must apply for a certificate of public use and convenience under the state statute. Therefore, the court finds that the proceedings before the HPUC were judicial in nature.

■ In addition, the proceedings were ongoing for the purposes of *Younger* abstention, despite the fact that the time for appealing the HPUC order to the Hawaii Supreme Court has lapsed. This principle was enunciated in *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482, *reh'g denied,* 421 U.S. 971, 95 S.Ct. 1969, 44 L.Ed.2d 463 (1975), where the Supreme Court held that *Younger* applies to a final lower state court proceeding which has not been appealed.

### b. *Exception to Younger*

■ Nevertheless, although the HPUC proceedings are judicial in nature, ongoing, and the state's interest in the HPUC proceedings may be of the type contemplated by *Younger,*[8] Matson argues that absten-

---

**8.** Matson's argument, that the state has "no interest in regulating interstate commerce" is not well-founded. Looking beyond the legal characterization of cargo as "interstate" or "intrastate," it is clear the state has an interest in regulating

freight carriage between points within the state according to the state statute which authorizes it to do so. Although interisland freight carriage may ultimately be characterized as "interstate

tion in this case is inappropriate because it attacks the HPUC's regulatory authority under the Hawaii Water Carrier Act as flagrantly unconstitutional. *See Younger,* 401 U.S. at 53–54, 91 S.Ct. at 754–55.

In *NOPSI,* the Supreme Court intimated that a facially conclusive claim of federal preemption might warrant abstention inappropriate. 109 S.Ct. at 2517. The Court did not decide the issue, however, because it found that the issue in *NOPSI* did not involve a claim of direct state regulation of interstate rates. *Id.*

In this case, with respect to the remaining constitutional question under the dormant commerce clause, Matson essentially attacks the facial validity of the HPUC order to require a certificate of public convenience and necessity with respect to any Matson shipment, regardless of FMC jurisdiction. Matson challenges the HPUC's authority to regulate interisland shipments, alleging that its attempt to do so directly burdens interstate commerce. This challenge fits within the exception suggested by the Supreme Court in *NOPSI,* and also within the *Younger* exception for challenges to statutes which are "flagrantly and patently violative of express constitutional prohibitions."[9] 401 U.S. at 53–54, 91 S.Ct. at 755.

With respect to this purely constitutional claim to the validity of the HPUC's action under the Hawaii Water Carrier Act, the court finds that abstention would be inappropriate.

### C. *The Anti–Injunction Act*

■ Defendants also argue that Matson's action is prohibited by the Anti–Injunction Act, 28 U.S.C. § 2283, which provides as follows:

> A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The clear language of the statute provides that it applies only to state court proceedings. While the United States Supreme Court has left open the question of whether the Anti–Injunction Act applies to state administrative proceedings which are clearly adjudicatory, *Gibson v. Berryhill,* 411 U.S. 564, 573, 93 S.Ct. 1689, 1695, 36 L.Ed.2d 488 (1973), defendants have cited to no cases which have so extended the Act's application.

This court has found no Ninth Circuit precedent extending the Anti–Injunction Act to state administrative proceedings. While this court has determined that the HPUC acted in a judicial capacity for *Younger* abstention purposes, it does not necessarily follow that the Anti–Injunction Act applies to bar this suit.[10] In light of the clear language of the statute and the lack of any controlling precedent expanding the meaning of "state court proceeding," this court cannot find that the Anti–Injunction Act applies to the facts of this case.

### D. *Res Judicata and Collateral Estoppel*

■ The doctrine of res judicata precludes parties from relitigating issues that were or could have been raised in a prior

---

commerce" for purposes of regulation, the state has an interest in the HPUC proceedings which determine compliance with the state regulatory scheme.

**9.** Although Matson does not specifically seek a declaration that the Hawaii Water Carrier Act violates the constitution, Matson does seek a declaration that the HPUC has no jurisdiction to regulate its inter-island shipments. The Hawaii Water Carrier Act expressly grants the HPUC such jurisdiction and a determination by this court that the HPUC has no such jurisdiction would render the statute inoperative.

**10.** The Sixth Circuit addressed this issue in a similar proceeding brought by an automobile distributor against the Bureau of Vehicle Regulation of the Kentucky Department of Transportation. *American Motors Sales Corporation v. Runke,* 708 F.2d 202 (6th Cir.1983). In that case, the plaintiff sought to enjoin the state agency from conducting any hearing or proceeding to enforce a Kentucky statute which allegedly conflicted with the federal Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221(e). *Id.* The Sixth Circuit Court of Appeals held that the Anti–Injunction Act did not apply to that administrative proceeding because of its executive nature as a licensing agency. *Id.* at 204, f.n. 5.

proceeding in which final judgment has been entered. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980); *Southern Pacific Transportation v. P.U.C. of State of California,* 716 F.2d 1285 (9th Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984).

■ The Supreme Court has held that a state administrative agency's finding of fact may be given preclusive effect in a federal action where the state agency (1) acted in a judicial capacity, (2) to resolve disputed issues of fact which were properly before it, (3) which the parties had an adequate opportunity to litigate. *University of Tennessee v. Elliott,* 478 U.S. 788, 798, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). Where these requirements are met, the federal court must give the state agency decision the same res judicata or collateral estoppel effect which it would receive in the state court. 106 S.Ct. at 3237; *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

The Ninth Circuit has expanded this rule, giving state agency determinations of issues of law preclusive effect as well. *Eilrich v. Remas,* 839 F.2d 630 (9th Cir.), *cert. denied,* 488 U.S. 819, 109 S.Ct. 60, 102 L.Ed.2d 38 (1988); *Guild Wineries and Distilleries v. Whitehall Co.,* 853 F.2d 755, 758 (9th Cir.1988).

■ Under Hawaii law, the findings of a state administrative agency may be given preclusive effect pursuant to the doctrines of collateral estoppel or res judicata. *Santos v. State of Hawaii Dept. of Transportation, Kauai Division,* 64 Haw. 648, 653, 646 P.2d 962 (1982). The appropriate test in determining whether the principles are applicable is as follows:

Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a par-

ty or in privity with a party to the prior adjudication? (Citations omitted.)
*Id.*

■ Matson first argues that the principles of res judicata and collateral estoppel cannot apply to the HPUC proceeding because the HPUC did not act in a judicial capacity to decide issues which were properly before it.[11] Matson's argument may have some merit, however, the court need not reach this issue since the court finds that the principles of res judicata and collateral estoppel are inapplicable to the facts of this case.

■ Res judicata, or claim preclusion, applies only where there was a prior suit between the same parties or their privies on the same cause of action. *Santos,* 64 Haw. at 653, 646 P.2d 962. Young Brothers may be correct in asserting that Matson should be estopped from relitigating issues against Young Brothers which could have been asserted in the previous proceeding between Young Brothers and Matson. Matson, however, is not precluded from litigating such issues against the HPUC.[12] The HPUC does not assert, nor can it, that it is in privity with Young Brothers for purposes of the present action. The HPUC and Matson were not adversaries in the prior litigation. The HPUC was the adjudicator, not a party. Therefore, claim preclusion cannot operate to preclude Matson's present claim against it. *See Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1518 (9th Cir.1985).

■ On the other hand, collateral estoppel, or issue preclusion, might be utilized by one not a party in the prior suit. *Morneau v. Stark Enterprises, Ltd.,* 56 Haw. 420, 423, 539 P.2d 472 (1975); *Ellis v. Crockett,* 51 Haw. 45, 55–56, 451 P.2d 814 (1969). Collateral estoppel, however, only precludes relitigation of issues actually and necessarily decided. *Eilrich,* 839 F.2d at 632; *Baron v. Bryant,* 556 F.Supp. 531

---

**11.** Although this court has determined that the HPUC acted in a judicial capacity for purposes of *Younger* abstention, the question remains undecided as to whether it decided "issues which were properly before it."

**12.** Matson has argued from the outset that Young Brothers has no protectable interest in this litigation and should not be a party. Accordingly, Matson has no objection to the doctrine of res judicata operating to preclude its action against Young Brothers.

(D.Haw.1983). The question, then, is whether the HPUC or the FMC decided the issue of whether the dormant commerce clause prevents the HPUC from requiring a certificate of public use and convenience.

The issue decided by the HPUC and the FMC was whether certain Matson cargo shipments are interstate or intrastate for purposes of regulatory jurisdiction. Neither the HPUC nor the FMC addressed the question of whether the dormant commerce clause prohibits state regulation as a matter of law.

Clearly, the issue was not before the FMC, which was concerned solely with its own jurisdiction over cargo between two states. Pursuant to the Shipping Act, the FMC cannot exercise jurisdiction over cargo between two points in the same state, but only over points in different states. 46 U.S.C.App. § 801. Therefore, the dormant commerce clause argument is irrelevant to the FMC's jurisdiction.

The dormant commerce clause issue was relevant, however, to the HPUC proceedings, since the HPUC determined its jurisdiction to regulate commerce between the islands of Hawaii. Matson did not raise the dormant commerce clause issue and the HPUC did not discuss it, but rather based its jurisdictional determination on shippers' intent and on the BRRA.

The court cannot find an identity of issues under the facts presented. Although the dormant commerce clause issue may be viewed as a separate legal theory on an issue before the HPUC and therefore precludable under collateral estoppel, see *Caldeira v. County of Kauai*, 866 F.2d 1175, 1179 (9th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 69, 107 L.Ed.2d 36 (1989), the court finds that such an application of the doctrine of collateral estoppel would be inappropriate in this case.

The court cannot find that the HPUC implicitly addressed the purely legal dor-

mant commerce clause issue by determining that the subject goods were not interstate. To do so would allow the HPUC to take preclusive advantage of its own judgment and would be inappropriate.[13] Matson is collaterally attacking the authority of the HPUC to regulate its interisland shipments irrespective of FMC jurisdiction. Although the HPUC may have the authority under Haw.Rev.Stat. Chs. 269 and 271G to determine whether a certificate of public utility and convenience is required, this court will not give preclusive effect to its unreviewed determination where Matson challenges the very authority given to the HPUC under the federal constitution.

Accordingly, the court finds that Matson's claim under the dormant commerce clause is not precluded by either collateral estoppel or res judicata.

### E. *The Dormant Commerce Clause*

Recently, the United States Supreme Court described the test to be applied in a dormant commerce clause analysis:

> When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry. When, however, a statute has only indirect effects on interstate commerce and regulates evenhandedly, we have examined whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.

*Brown–Forman Distillers v. N.Y. Liquor Auth.*, 476 U.S. 573, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986). The Court elaborated as follows:

> We have also recognized that there is no clear line separating the category of state regulation that is virtually per se

---

13. If Matson were requesting this court to address issues which had been or should have been decided by the Hawaii Supreme Court on review of the HPUC order, the defendants would have a stronger argument that res judicata would apply to preclude this court from addressing those issues. *See Southern Pacific Transportation*, 716 F.2d at 1289 (California

state court ruling given res judicata effect on a federal preemption issue.) Matson, however, requests this court to address the legality of the HPUC's issuance of the order in the first place based on the dormant commerce clause. There are no decisions, either state or federal, which support the preclusion sought by defendants under these circumstances.

invalid under the commerce clause, and the category subject to the . . . balancing approach. In either situation the critical consideration is the overall effect of the statute on both local and interstate activity.

*Id.*

■ Matson asserts that the Hawaii Water Carrier Act, insofar as it requires a certificate of public use and convenience, imposes a direct burden on interstate commerce and therefore is *per se* unconstitutional. Alternatively, Matson argues that even if the burden on interstate commerce is indirect, the Hawaii Water Carrier Act must fail under the *Pike v. Bruce Church,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) balancing test.

Matson's argument first must rise or fall on whether the Hawaii Water Carrier Act impacts interstate commerce or only impacts intrastate commerce. As Matson concedes, on its face the Act provides that it does not apply to interstate commerce. Matson's position on this issue, however, is not completely clear. In its Supplemental Memorandum of Law in Support of Motion for Preliminary Injunction, Matson asserts that the Hawaii Water Carrier Act unconstitutionally burdens interstate commerce in violation of the commerce clause. Confusingly, Matson later contends in its Reply Memorandum that it is *not* arguing that the statute is unconstitutional, but rather that the HPUC order requiring a certificate of public convenience and necessity is unconstitutional.[14] Reply Memorandum in Support of Motion for Preliminary Injunction at 2.

Nevertheless, the significant question is whether the Matson interisland shipments are interstate and therefore, outside the jurisdiction of the HPUC. For purposes of the dormant commerce clause analysis, Matson asserts it need not look to the FMC determinations based on shippers' intent. Matson argues that regardless of the origin of its goods, shipment among the Hawaiian islands necessarily travels on and through the high seas and outside the State of Hawaii and therefore, is in interstate commerce. Matson bases its argument on *Island Airlines, Inc. v. C.A.B.,* 352 F.2d 735 (9th Cir.1965) and various federal statutes which define "interstate commerce."[15]

First, there is no dispute that freight carriage between the Hawaiian islands necessarily crosses over international waters and is therefore subject to federal jurisdiction. *See Lord v. Steamship Co.,* 102 U.S. 541, 26 L.Ed. 224 (1880); *Island Airlines, Inc.,* 352 F.2d at 742–743. In *Lord,* the United States Supreme Court held that transportation of goods over water between ports within the state of California was within the federal government's regulatory power. *Id.* The court stated as follows:

> Navigation on the high seas is necessarily national in its character. Such navigation is clearly a matter of 'external concern,' affecting the nation as a nation in its external affairs. It must, therefore, be subject to the national government.

*Id.*

The question then becomes, whether an island state may regulate carriage over the high seas between points within the state, where Congress has chosen not to.

In *Wilmington Transportation Company v. Railroad Commission of California,* 236 U.S. 151, 35 S.Ct. 276, 59 L.Ed. 508 (1915), the United States Supreme Court held that the state of California's regula-

---

**14.** This distinction seems to be meritless since the Hawaii Water Carrier Act explicitly allows the HPUC to require a certificate of public convenience for interisland shipments. If all interisland shipments are actually interstate commerce because they pass over the high seas, as Matson contends, then Matson appears to be attacking the statute itself which provides for HPUC regulation of interisland shipments.

**15.** Matson contends that this court should adopt Congress' definition of interstate and foreign commerce as stated in the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.,* which includes commerce "between points within the same State . . . but through any place outside thereof." *See United States of America v. Produce Hawaii, Inc.,* 716 F.Supp. 461 (D.Haw.1989). This definition is contained in many statutes including, among others, the Commodity Exchange Act, 7 U.S.C. § 2; the Agricultural Adjustment Act of 1937, 7 U.S.C. § 610(j); and the Natural Gas Act, 15 U.S.C. § 717a.

tion of rates between San Pedro, California and Catalina Island did not violate the commerce clause. The court posed the following question:

In this aspect, the question is whether the mere existence of the Federal power, that is, while it is dormant, precludes the exercise of state authority to prevent exorbitant charges with respect to this traffic which has its origin and destination within the limits of the state.

35 S.Ct. at 277. The Court resolved the issue as follows:

... there is, in our judgment, no ground for saying that where the transportation is between two places in the same state, it is less a subject for local action, in the absence of Federal interposition, because the voyage is over a stretch of open sea. Congress has not attempted to intervene, and we find no basis for the conclusion that the subject is one which must be deemed to be wholly free from regulation unless Congress deals with it. On the contrary, it is precisely of that local character which permits it to be left appropriately to the care of the state.

*Id.* at 279.

Matson asserts that *Wilmington* has no application to the instant case because it involved rate regulation as opposed to the requirement of a certificate of public convenience and necessity. Matson instead argues that *Buck v. Kuykendall*, 267 U.S. 307, 45 S.Ct. 324, 69 L.Ed. 623 (1925), creates a bright line rule that the state may not require a certificate of public use and convenience if it impacts interstate commerce.

In *Buck*, the United States Supreme Court held that the commerce clause prevents the State of Washington from requiring a certificate of public use and convenience for bus service between Seattle, Washington and Portland, Oregon. 45 S.Ct. at 326. The Court stated as follows:

Thus, the provision of the Washington statute is a regulation, not of the use of its own highways, but of interstate commerce. Its effect upon such commerce is not merely to burden, but to obstruct, it. Such state action is forbidden by the commerce clause. It also defeats the

purpose of Congress, expressed in the legislation giving federal aid for the construction of interstate highways.

*Id.*

The instant case, however, is distinguishable from *Buck*. In *Buck*, it was clear that the state regulation applied to transportation between a point in the state of Washington to a point outside the state, that is, it applied to motor carriers acting exclusively in interstate commerce. *Id.* Although the state of Washington argued that it was within its police power to regulate its own highways, the Supreme Court found that the effect of such regulation was a direct burden to interstate commerce when applied to routes between Washington and Oregon. *Id.*

The court agrees that under *Buck* it would be wholly improper for the state to require a certificate of public use and convenience for shipments between Hawaii and the mainland United States which are purely interstate in nature. There is no dispute with respect to that issue. In this case, however, the HPUC claims to require a certificate of public use and convenience only for purely intrastate commerce, that is, commerce between points within the state. Matson, on the other hand, insists that shipments between two points within the state are nonetheless in interstate commerce because they pass over the high seas. This clearly presents a unique problem not addressed by the Supreme Court in *Buck*.

On the other hand, *Wilmington* does not squarely address the specific facts presented here either. The Supreme Court clearly based its ruling in *Wilmington* on the purely local character of the transportation of passengers and goods to Catalina Island stating "[w]e are not here dealing with the case of property which is in course of continuous transportation to another state or to a foreign country." *Id.*, 35 S.Ct. at 278. The Court made its determination "... solely with respect to such shipments over this route as are local to the state, both as to the beginning and the end of the transportation." *Id.* The crux of Matson's initial argument, is that the shipments in

question originate on the mainland United States, are not purely local in nature, and are thus outside the purview of *Wilmington*.[16] The FMC and the HPUC, however, disagree with Matson with respect to certain shipments which they have characterized as intrastate.

The premier case dealing with jurisdiction over transportation between the Hawaiian islands is also not directly on point. The Ninth Circuit Court of Appeals addressed the issue of regulation of interisland air transportation in *Island Airlines, Inc. v. C.A.B.*, 352 F.2d 735. In affirming Judge Martin Pence's district court decision, the court held that the Civil Aeronautics Board (C.A.B.) has exclusive jurisdiction of interisland flights under the Federal Aviation Act which defines interstate commerce as "transportation between points in the same state over a foreign country or high seas...." 49 U.S.C. § 1301(21)(a).

Although both the district court and appellate court opinions in *Island Airlines, Inc.* are illuminating in their discussions of federal jurisdiction over waters between the Hawaiian islands, the situation presented in that case involved an explicit act of Congress defining interstate commerce for the purpose of C.A.B. regulation. A similar statute guided this court's decision in *United States v. Produce Hawaii*, 716 F.Supp. 461. Such a statute is lacking in the present case. In fact, the federal regulatory body, the FMC, does not have jurisdiction over transportation between two points in the same state and has affirmatively denied jurisdiction over certain Matson interisland shipments which it determined were not in continuous commerce.

When Hawaii was admitted as a state, the issue of regulation of interisland commerce was raised, but never expressly addressed anywhere in the Admission Act. The Act did, however, provide as follows:

(a) Nothing contained in this Act shall be construed as depriving the Federal Maritime Board of the exclusive jurisdiction heretofore conferred on it over common carriers engaged in transportation by water between any port in the State of Hawaii and other ports in the United States, or possessions, or as conferring on the Interstate Commerce Commission jurisdiction over transportation by water between any such ports.

Section 18, Hawaii Statehood Act, Pub.L. 86–3, 73 Stat. 4 (March 18, 1959).

Although Congress did not specifically address regulatory jurisdiction over interisland transportation in the Admission Act, a Department of the Interior Report which was included in the Senate Committee Report accompanying the 1959 statehood bill indicates that Congress was aware of this issue when admitting Hawaii to the union. The Department of the Interior indicated that, in its opinion, interisland transportation would be in foreign commerce since it would necessarily pass over international waters. Nevertheless, the Department believed such commerce was within the state's regulatory jurisdiction:

The circumstances of interisland transportation in Hawaii seem sufficiently akin to those considered in the *Wilmington* case to bring such transportation within the principle of that case. If so, the State could regulate the interisland transportation, provided it did so in a nondiscriminatory manner, and provided no inconsistent action had been taken by the Congress.

Senate Report No. 80, March 5, 1959, reprinted in 1959 *U.S.Code, Cong. & Admin. News* 1346, 1408–1411.

This view was adopted by Judge Pence in *C.A.B. v. Island Airlines, Inc.:*

Congress recognized that Hawaii was unique in that it was a state composed entirely of islands. If Congress had wanted to leave to the State complete

---

**16.** Matson also argues that the *Wilmington* case must be distinguished because it involved excessive rate regulation. The court does not find, however, that this factual distinction dilutes the legal principles applied. Regulating excessive rates could create a burden to interstate commerce just as requiring a certificate of public convenience might. There is no indication that the state will apply this requirement in a discriminatory fashion to exclude interstate shippers. Furthermore, Matson also objects to HPUC regulation of rates and tariffs and seeks a declaration prohibiting that type of regulation as well.

control over interisland passage by sea or air, it could have done so.

235 F.Supp. 990, 1007–1008 (D.Haw.1964).[17]

■ Although this court is convinced that Congress has the power under the commerce clause to regulate commerce involving navigable and international waters, this court does not find that this necessarily prohibits the State of Hawaii from regulating commerce between places within the state solely because it involves such waters. *See Huron Portland Cement Company v. City of Detroit,* 362 U.S. 440, 443, 80 S.Ct. 813, 815–16, 4 L.Ed.2d 852 (1960); *Wilmington,* 35 S.Ct. at 279.

States generally may regulate commerce which is purely intrastate. Commerce between two points within the State of Hawaii frequently necessarily involves passage over international waters because Hawaii, unlike any other state, is an island state. While some shipments between islands might be labeled interstate, having originated on the mainland, other shipments may be purely local in character but nonetheless pass over international waters to reach another point within the state.

To hold that the State of Hawaii may not regulate any transportation between islands, even where there is no federal regulation, merely because such transportation passes over the high seas, would in effect place Hawaii on a different footing than the rest of the states in the union. It would also create an anomalous situation where such shipping and shippers would in fact be wholly unregulated to the severe detriment of the people of Hawaii. Therefore, this court finds, as the Supreme Court found in *Wilmington,*

> ... no basis for the conclusion that the subject is one which must be deemed to be wholly free from regulation unless Congress deals with it. On the contrary, it is precisely of that local character which permits it to be left appropriately to the care of the state.

35 S.Ct. at 279.

■ Nonetheless, disregarding the "high seas" argument, the HPUC regula-

tion may create an indirect burden on interstate commerce, insofar as it regulates shipments which, at some point in time, originated outside of the state. Such regulation is permissible, however, if the state regulates evenhandedly, has a legitimate interest, and the local benefits outweigh the burden on interstate commerce. *Pike,* 397 U.S. at 142, 90 S.Ct. at 847.

Matson has not, nor can it now, demonstrate that the State has applied the Act unreasonably or in a discriminatory manner. Matson has never applied for a certificate of public convenience or necessity. There is absolutely no indication that the purpose of the requirement is to prohibit competition or obstruct interstate commerce. *See Buck,* 45 S.Ct. at 326.

Hawaii has a legitimate interest, as an island state, in regulating transportation between ports within the state. Applying a balancing approach, there is no indication that the HPUC does not regulate evenhandedly or that the burden placed on interstate commerce clearly exceeds the local benefits. *See Brown–Forman Distillers,* 106 S.Ct. at 2084.

Therefore, the intrastate nature of the commerce sought to be regulated by the HPUC, the distinctive character of Hawaii as an island state, and Congress' decision not to intervene in this area, persuade this court to follow the Supreme Court's reasoning in *Wilmington.*

■ Accordingly, the court rejects Matson's constitutional challenge to the HPUC's ability to regulate interisland freight carriage and finds that the HPUC may regulate interisland shipping which is outside the jurisdiction of the FMC pursuant to the Hawaii Water Carrier Act, Haw. Rev.Stat. Ch. 271G.

In so holding, this court does not pass on the interstate or intrastate nature of particular Matson goods being shipped pursuant to Tariff 60 or amended Tariff 60. The court only holds that the HPUC may regulate those interisland shipments which are

---

**17.** Judge Pence went on to find, however, that Congress chose to regulate interisland air transportation through the Federal Aviation Act, and

in so doing, did not put the state of Hawaii on different footing than that of the other states of the Union. *Id.* at 1008.

not within the jurisdiction of the FMC despite the fact that such shipments pass over international waters.

 The court rejects, however, the HPUC's position that it has jurisdiction over all shipments which cross the docks in Honolulu pursuant to the BRRA, 49 U.S.C. § 10525(e). While Section 10525(e) of the Interstate Commerce Act grants the HPUC authority to regulate motor carriers operating in Hawaii, it does not automatically transform all motor carriage into intrastate commerce which may be regulated by the HPUC alone. It merely exempts motor carriage from regulation by the Interstate Commerce Commission ("ICC").

Therefore, the HPUC's attempt to exercise sweeping regulatory authority based on Section 10525(e), contrary to the FMC's determination of jurisdiction, violates the Commerce Clause as well as the Supremacy Clause of the United States Constitution.[18] Each shipment must be considered separately as to its interstate or intrastate character. See FMC Order at 63. Goods that remain in continuous interstate commerce are subject to FMC and not HPUC jurisdiction and may not be regulated by the HPUC simply because they cross the Honolulu docks. *Id.* at 47, 48.

Accordingly, the court grants summary judgment in favor of Matson in part and enjoins the HPUC from exercising jurisdiction over Matson shipments under the BRRA, either through Order 10497 or otherwise, solely because the shipments cross the Honolulu docks.

## III. MATSON'S MOTION TO AMEND COMPLAINT

 Matson's original complaint seeks an order enjoining HPUC Order 10497 which prohibits four specific shipments by Matson pursuant to its Tariff 60. Matson also seeks a declaration that all Tariff 60 goods are within the exclusive jurisdiction of the FMC and may not be regulated by the HPUC. Since the issuance of Order

10497, however, the FMC has stated that it does not have jurisdiction over Tariff 60 goods with respect to at least one of the subject shippers, Paradise. The FMC has also rejected Matson's attempt to generally invoke FMC jurisdiction with respect to all shipments with certain specified characteristics.

Accordingly, Matson has amended Tariff 60 in an attempt to comport with the FMC order and now moves, pursuant to Fed.R. Civ.P. 15(a) for leave to amend its complaint to assert rights under the amended tariff.

 While leave to amend should freely be given where justice requires, leave to amend should not be allowed if the proposed amendment would fail to state a claim upon which relief can be granted. *First Savings and Loan Insurance Corp. v. Alexander*, 590 F.Supp. 834 (D.Haw. 1984). Defendants assert that leave to amend should not be granted since there exists no case and controversy with respect to the amended Tariff 60.

The basic inquiry in determining whether the plaintiff has met the Article III requirement of a case or controversy is whether

> conflicting contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract. A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.

*Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (quoting *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945)).

Tariff 60 has now been amended as a result of the FMC's determination that the Paradise shipments, and certain other general shipments under Tariff 60, are not

---

**18.** Under the HPUC's interpretation of the BRRA, it would have jurisdiction to regulate shipments handled by ABF Cartage on behalf of ABF Freight. The FMC, however, has determined that this cargo moves in the continuous stream of interstate commerce and is therefore within the FMC's regulatory jurisdiction. FMC Order at 54. This court finds that the HPUC's attempt to regulate such shipments would clearly violate both the Supremacy Clause and the Commerce Clause of the United States Constitution.

interstate goods and therefore, not within the FMC's jurisdiction.

In order to find a case and controversy with respect to amended Tariff 60, this court would first have to find that Order 10497 applies to shipments made under the amended Tariff 60 which, as of the date this motion was filed, was not yet in effect. Second, this court would be put in the position of determining whether amended Tariff 60 complies with the FMC order before the FMC has been given the opportunity to determine its own jurisdiction.

Matson argues that Order 10497 will prohibit it from carrying freight under the *amended* Tariff 60 because the HPUC takes the position that it may regulate all shipments which cross the Honolulu docks, pursuant to its reading of the Hawaii Water Carriers Act and the BRRA. *See* Order 10497 at 34–38, 45. This argument is now moot, however, since this court has held that the HPUC is enjoined from regulating interisland shipments based solely on the BRRA.

The HPUC's order was issued to address certain specific shipments being made pursuant to Tariff 60. The HPUC concedes in that order that the FMC is not bound by its findings and may make a *de novo* determination with respect to whether particular Tariff 60 shipments are interstate for purposes of its jurisdiction. Order 10497 at 9. The FMC has now done just that, making explicit findings with respect to the very shipments which were the subject of the HPUC's Order 10497.

The court does not find that a definite and concrete dispute exists with respect to amended Tariff 60 goods. Having disposed of the dormant commerce clause issue, the only remaining question would be whether the FMC or the HPUC has jurisdiction over amended Tariff 60 goods. At this point, neither regulatory agency has made a determination with respect to these specific goods and this court cannot inject itself where there is not yet a concrete dispute. Amendment at this stage is premature.

The interstate character of cargo is fact specific, as is obvious from the FMC's lengthy and thorough order. Without an actual controversy between Matson and the HPUC over these specific goods, the court cannot now rule that its amended Tariff 60 now converts its previously held intrastate shipments into interstate shipments within FMC jurisdiction.

Therefore, the court finds that amendment of the complaint to assert rights under amended Tariff 60 is not appropriate at this time and DENIES Matson's motion for leave to amend its complaint.

## IV. CONCLUSION

The court finds the HPUC is not precluded by the Dormant Commerce Clause of the United States Constitution from exercising jurisdiction pursuant to the Hawaii Water Carrier Act, Haw.Rev.Stat. Ch. 271G, over intrastate shipment of goods by sea between the islands of the State of Hawaii, and therefore, denies Matson's motion for summary judgment on that issue.

The court finds, however, that the HPUC is precluded from exercising jurisdiction over Matson Tariff 60 goods, pursuant to the BRRA and Order 10497, simply because the goods cross the Honolulu docks without further inquiry into their continuous movement through interstate commerce. Accordingly, the court grants in part Matson's cross-motion for summary judgment and enjoins the HPUC from so exercising jurisdiction.

Accordingly, for the reasons set forth above, the court grants in part and denies in part the defendants' and defendant-intervenor's motions for summary judgment; grants in part and denies in part plaintiff's cross-motion for summary judgment or partial summary judgment, and denies plaintiff's motion to amend its complaint.

IT IS SO ORDERED.