No. 84–634. CHEVRON U. S. A., INC., ET AL. *v.* SHEFFIELD, GOVERNOR OF ALASKA, ET AL. C. A. 9th Cir. Certiorari denied.

Opinion of JUSTICE STEVENS respecting the denial of the petition for writ of certiorari.

Reasonable Justices can certainly differ on whether certiorari should be granted in this case. JUSTICE WHITE, in dissent, has explained why he favors a grant of the petition for writ of certiorari. There is, of course, no reason why that dissent should identify the reasons supporting a denial of the petition. Matters such as the fact that apparently only one 26-year-old vessel may be affected by the Ninth Circuit's ruling,[1] that apparently no other State has enacted a deballasting prohibition similar to Alaska's, and that the Coast Guard retains the power to modify its regulations relating to deballasting lend support to the Court's discretionary determination that review in this Court is not necessary even if the Court of Appeals' decision is arguably incorrect. I add these few words only because of my concern that unanswered dissents from denial of certiorari sometimes lead the uninformed reader to conclude that the Court is not managing its discretionary docket in a responsible manner. See *Singleton* v. *Commissioner*, 439 U. S. 940, 942, 945 (1978) (opinion of STEVENS, J., respecting the denial of the petition for writ of certiorari).[2]

JUSTICE WHITE, dissenting.

In this case, the United States Court of Appeals for the Ninth Circuit held that the State of Alaska's Tanker Act, former Alaska Stat. Ann. § 46.03.750(e) (Supp. 1977), amended in 1980 and cur-

---

[1] Moreover, this vessel is able to comply with the Alaska statute at some ports because of the presence of onshore reception facilities, thus further highlighting the minimal effect of the Court of Appeals' ruling.

[2] As I noted in *Singleton:*

"Since the Court provides no explanation of the reasons for denying certiorari, the dissenter's arguments in favor of a grant are not answered and therefore typically appear to be more persuasive than most other opinions. Moreover, since they often omit any reference to valid reasons for denying certiorari, they tend to imply that the Court has been unfaithful to its responsibilities or has implicitly reached a decision on the merits when, in fact, there is no basis for such an inference." 439 U. S., at 945.

rently Alaska Stat. Ann. §§ 46.03.750(a), (b) (1982), which restricts deballasting by oil tankers in Alaskan waters, was not pre-empted by regulations promulgated by the Coast Guard under Title II of the Ports and Waterways Safety Act of 1972 (PWSA).[1] *Chevron U. S. A., Inc.* v. *Hammond,* 726 F. 2d 483 (1984). I believe that in so holding, the court arguably "decided a federal question in a way in conflict with applicable decisions of this Court." This Court's Rule 17.1(c). Accordingly, I would grant certiorari to review the judgment of the Court of Appeals.

In *Ray* v. *Atlantic Richfield Co.,* 435 U. S. 151 (1978), we held that federal regulations governing oil tanker design and construction promulgated under Title II of the PWSA pre-empt more stringent state regulations covering the same subject matter. Our holding was based in large part on our conclusion that Title II was intended to authorize comprehensive standards "[t]o implement the twin goals of providing for vessel safety and protecting the marine environment." *Id.,* at 161. Under the statute, we observed, "the Secretary [of Transportation] must issue all design and construction regulations that he deems necessary for these ends, after considering the specified statutory standards." *Id.,* at 165. When a State has imposed a more stringent standard than the Secretary but the state and federal standards "ai[m] at precisely the same ends," we concluded, "[t]he Supremacy Clause dictates that the federal judgment . . . prevail over the contrary state judgment." *Ibid.*

As the court below pointed out, *Ray* dealt with federal standards for tanker design and construction, whereas this case involves standards governing tanker operations—specifically, standards governing the discharge of seawater loaded into cargo compartments and used as ballast.[2] The need for national uniformity in the area of standards for tanker operations, the court concluded, is not so great as the need for uniformity in standards governing

---

[1] 86 Stat. 424. Title II of the PWSA, as amended by the Port and Tanker Safety Act of 1978, Pub. L. 95–474, 92 Stat 1471, was, until 1983, codified at 46 U. S. C. § 391a. In 1983, the PWSA/PTSA was recodified at 46 U. S. C. §§ 3701–3718 (1982 ed., Supp. I).

[2] The federal standard prohibits discharge of such water within 50 miles of shore unless the water meets certain standards of cleanliness. 33 CFR §§ 157.03(a)(1), 157.29, 157.37(a)(1) (1982). The state standards forbid *any* discharge of water from a tanker's cargo tanks within Alaskan territorial waters, regardless of the cleanliness of the water.

tanker operation and design; for while a tanker can under some circumstances alter its operating practices to conform to the requirements of the State whose territorial waters it is traversing, it cannot alter its construction or design. Accordingly, the absence of uniform design and construction requirements may be a far more serious impediment to the tanker industry than a lack of uniformity with respect to operations.

Although this distinction is not insubstantial,[3] the similarities between this case and *Ray* strike me as greater than the lower court was willing to recognize. Like *Ray*, this case involves federal regulations promulgated under Title II of the PWSA. As in *Ray*, the Secretary was obliged by the Act to issue "all . . . regulations that he deems necessary" to meet the goal of protecting the marine environment. *Id.*, at 165; see 46 U. S. C. §§ 391a(1)(D), 391a(6)(A). And, as in *Ray*, the state statute at issue in this case aims at precisely the same goal as the federal regulation, and thus amounts to a rejection by the State of the federal judgment as to the level of protection necessary to achieve the common goal. Under these circumstances, I would have thought that there would be a strong presumption that our ruling in *Ray* was applicable here as well.

In rejecting the applicability of *Ray*, the Court of Appeals relied not only on its perception of a diminished need for uniformity in the area of standards governing tanker operations, but also on its belief that the Clean Water Act, 33 U. S. C. § 1251 *et seq.*, reflects congressional recognition of concurrent state and federal authority to protect the environment within the territorial waters of the States. The court placed primary emphasis on those provisions of the Act that establish the National Pollutant Discharge Elimination System (NPDES), 33 U. S. C. § 1342, under which minimum federal standards regulating the discharge of pollutants may be supplanted by more stringent state standards. These

---

[3] The distinction should probably not be overstated, however. Design specifications and operating procedures are in many respects inextricably linked, and this linkage is striking where ballasting—the subject of the regulations at issue in this case—is concerned. The design of a tanker may require it to use seawater as ballast in order to operate safely. Such a tanker may be unable to take on oil at a particular port if it may not deballast in waters adjacent to that port. Restrictions on deballasting thus may exclude certain tankers from certain ports fully as effectively as regulations prohibiting all tankers with particular design features.

provisions of the Clean Water Act, however, are of extremely limited relevance to the questions posed by this case, as federal regulations specifically exempt from the NPDES program discharges from vessels incident to their normal operation. 40 CFR § 122.3(a) (1984). The Clean Water Act thus sheds little or no light on the question whether protection of the marine environment against the threats posed specifically by oil tanker traffic is, under Title II of the PWSA, a matter in which federal regulation has displaced state control.

The apparent inconsistency of the decision below with our own decision in *Ray*, coupled with the lower court's reliance on statutory materials of questionable relevance to the case before it, leads me to conclude that this is a case in which we should exercise our discretionary jurisdiction. I therefore dissent from the denial of certiorari.